UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

U.S. DISTRICT COURT
DISTRICT OF N.H.
FILED

2015 MAR -6  P 12: 57

Douglas Bersaw                                      Hon. Joseph N. Laplante
Plaintiff

v.

Northland Group Inc.                                Civil Case No. 14-cv-128-JL
Defendant

### BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, Douglas Bersaw *pro se,* respectfully submits this Brief and Memorandum of Law in support of the Motion for Summary Judgment submitted by the Plaintiff to this court at the hearing of March 6, 2015.

### INTRODUCTION

Defendant's Brief and Memorandum, as well as the record to date in this case, bring forth a number of facts that should be enumerated and considered, to wit:

1. Two of Plaintiff's credit reports were obtained by Northland.

2. Northland is a debt collector operating according to their affidavits submitted.

3. The obtaining of credit reports such as the Plaintiff's, as described in Northland's Brief in support of its Motion for SJ, is done as a normal part of Northland's business practice.

4. The alleged credit card 'accounts' that the Defendant Northland purportedly had a right to collect (under agency from Palisades who claims to have 'owned' two of Plaintiff's credit

card accounts since 2005) are listed in the Affidavit of Stephen K. Braun. The origin of those accounts presumably predates their purchase by Palisades from Chase Bank USA N.A., probably by a year or more at least.[1]

## ARGUMENTS IN SUPPORT

Plaintiff accepts and reiterates all of the Defendant's positions outlined in section IV entitled Standards of Review in their Memorandum in Support, as well as their Procedural Background recitation in the same document.

Where the Plaintiff parts company with the Defendants in their understanding of this case is over the issues that are questions of law discussed below. Addendum 1 below is incorporated here, being taken verbatim from the Plaintiff's argument in its previous Objection to the Defendant's Motion for Summary Judgment.

In the Defendant's Reply (Section B) filed on 11/04/14 the following argument is made: Quote: "Plaintiff's argument *"has been universally rejected by every court that has directly addressed it."* The FCRA takes its definition of the term "account" from the Electronic Fund Transfer Act, which provides:

The term account means a demand deposit, savings deposit, or other asset account (other than an occasional or incidental credit balance in an open credit plan as defined in section 1602(i) of this title), as described in the regulations of the Bureau, established primarily for personal, family, or household purposes, but such term does not describe an account held by a financial institution pursuant to a bona fide trust agreement." End quote.

Now, this argument from the Defendant accomplishes two things. First it clearly gives the

---

[1] That being the case, these purported debts are unenforceable due to various Statutes of Limitations.

Plaintiff's Brief in Support of MSJ        2

statutory definition of 'account' applicable to this subchapter (the FCRA) that specifically excludes credit card accounts; the very type that Northland claims to have been trying to collect. One must ask why would the section discussing permissible purpose have specifically used that definition if the Congress wished the word 'account' to have a meaning that encompassed credit card accounts? Second, his quote references several court cases that have held that the term 'account' DOES apply to credit card 'accounts'.

Plaintiff would point out that in one of these cases (*Pyle v. First Nat'l Collection Bureau*, 2012 WL) Plaintiff's Complaint was dismissed without prejudice and leave was granted to amend. It was not dispositive of the 'account' definition issue. In the *Fritz* case cited by the Defendant the court agreed that 1) they had no Appellate guidance on the matter and 2) several other Circuit courts had found a different meaning of the word account than Congress specified and 3) they first looked to statutory construction rules but then ecided to glean the meaning of the word from the broader context of the statute. Although this may be an acceptable method of statutory construction in some places, it is clearly at odds with the historical rubric of statutory construction.

Even if one were to accept the Fritz court's "broader gleaning,"(which is not required) the Plaintiff would argue that the definition is NOT in contradiction to the broader context relative to the Consumer and that the stated Congressional intent cited at footnote three of this Brief and the general public policy of doing everything reasonable to protect the privacy of largely helpless consumers, would argue persuasively for a clear intent, strict statutory construction. These decisions cited by the Defendant, in the opinion of the Plaintiff, fly in the face of the clear statutory definition and therefore this Court may offer a different opinion since no controlling case law has been cited. Courts have held that clear statutory language should be interpreted according to the

plain language of the statute, as this court has held in Moore v. MERS[2] Therefore the Plaintiff argues that precise statutory language should not be ignored in order to give the effect of making what is NOT an 'account' under the law into something that IS one, and thereby granting to the Defendant a 'permissible purpose' where none was envisioned or allowed under the law.

Furthermore, it is permissible to invoke an equitable understanding when considering these matters, and the Plaintiff would argue that the purposes of the law are fulfilled by this interpretation. Clearly, one reason to obtain a report is to see if extension of credit to a consumer might be prudent for the one who obtains the report and intends to make a 'bona fide' offer of credit. This falls within the congressional intent in making credit reports available for purposes of commerce. This is permissible under certain clearly defined parameters. Northland is not alleging that their purpose fell under the first category of permissible purposes but rather under the second, which is "the review or collection of an account of the consumer." Those who do banking and own the type of accounts specified in the definition of 'account' are hereby included in the word 'consumer' and excluded from the right to privacy regarding their personal information available in credit reports since they are currently consumers having an 'account' to review. Now, we argue that one of the purposes of the FCRA is to assure accurate reporting as to the 'credit worthiness' of the consumer as well as protecting the 'confidentiality' of such information and the privacy of the consumer[3], and that it was not envisioned by Congress that the acquisition of credit reports could or

---

[2] The court acknowledges that other courts have reached the opposite conclusion. See, e.g., Stair ex rel. Smith v. Thomas &Cook, 254 F.R.D. 191, 196-97 (D.N.J. 2008). This court respectfully disagrees with the conclusion reached in those cases, which follows from concerns "that the FDCPA's purpose—'to eliminate abusive debt collection practices'—would be undermined if subsequent debt collectors were excused from complying with the requirements contained in section 1692g." Id. (internal citation omitted). Such concerns cannot justify a departure from the straightforward language of the statute, and they are, in any event, unfounded.

[3] **15 USC 1681 Congressional Findings and Statement of Purpose**
(a) **Accuracy and fairness of credit reporting**
The Congress makes the following findings:

Plaintiff's Brief in Support of MSJ                                                4

should be used as a sort of 'free private detective agency' for anyone wishing to perpetually use that resource either for 'data-mining' or as a tool to poke into the private affairs of consumers in order to discover information not otherwise readily available to the procurer of such reports for purposes NOT clearly delineated in the statute. Hence the very clear and specific definition of the term 'account'.

Northland clearly had no need to review any account of the Plaintiff since these purported and disputed credit card debts could have been 'reviewed' in the records of either Chase or Palisades or any of the other third party debt collectors who have been involved prior to Northland. In any case, the clear and precise language of the definition says that the review and collection of consumer credit card accounts is excluded as a permissible purpose. Since these purported 'accounts' do not fall within the scope of the definition, that should be the end of the discussion regarding Northland's permissible purpose.

Moving on, we find that Northland, in order to 'cover its bases' essentially argues that even if they did have no permissible purpose they were "acting in good faith" and not willfully, thereby exculpating them from any responsibility. We argue that of course their actions were willful, since it was the common and accepted practice of the firm to pull these reports 'certifying' that they had permissible purpose. They could have pled 'ignorance' of the law but that would have been useless,

---

(1) The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.
(2) An elaborate mechanism has been developed for investigating and evaluating the credit worthiness, credit standing, credit capacity, character, and general reputation of consumers.
(3) Consumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers.
(4) There is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.
(b) **Reasonable procedures**
It is the purpose of this subchapter to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter.

especially in light of the fact that they are debt collectors and regularly operate under the proscriptions of the FCRA and the FDCPA and are presumed to be cognizant of their duties under the law. They are not ignorant, but rather willfully hoped that no one would call them out on their violations and therefore they might, with relative impunity, constantly 'get away with it' in terms of skirting the clear intent of Congress in protecting the privacy of consumers. One might argue that a series of never-ending 'credit pulls' (pulls that may materially affect the credit rating of the consumer thus causing damage to their credit scores) by persons who have no right to the reports, yet can get one simply by stating that they are debt collectors collecting on some 'account' while using the term 'account' equivocally. Congress did not say 'collection of a debt', but rather, collection of an account, which Congress then clearly defined.

## ADDENDUM 1 - TAKEN FROM PLAINTIFF'S PREVIOUS OBJECTION

The following quote is taken word for word from the Defendant's motion:

"Northland had a permissible purpose to obtain Plaintiff's credit bureau reports. The FCRA sets forth to whom a consumer reporting agency may furnish a consumer report. *See 15 U.S.C. 1681b.* Further, Section 1681b(a) expressly provides the circumstances under which "any consumer reporting agency may furnish a consumer report." In relevant part, these circumstances include furnishing a report to a person whom the consumer reporting agency has reason to believe "intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, *or review or collection of an account of, the consumer. 15 U.S.C. 1681b(a)(3)(A)* (emphasis added).

A collection agency is, therefore, permitted to obtain a consumer report if the agency is doing so for the purposes of collecting a debt...."

Notice that counsel subtly alters the statutory language posted above in bold letters when he makes the conclusion in the second paragraph that the "collection agency" (which he purports Northland to be) may obtain a credit report for the purposes of "collecting a debt". That is not the plain language of the Statute. The bold phrase states: **collection of an account of**, and NOT collection of a debt of, the consumer.

In addition, the use of the conjunction OR prior to the word review means that the second phrase following the word or is an additional reason why a report may be issued by the CRA to a user such as Northland, but only IF the user's purpose, in relation to the consumer reported upon, is CERTIFIED to the CRA. Notice that the phrase preceding the word OR (intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to) could not possibly apply to Northland since they offered no issuance of credit to the Plaintiff and had no transactions of any sort with the Plaintiff. Nor does EITHER phrase (before or after the word OR) refer to the purported attempt by Northland to collect any real or imagined debt of the Plaintiff. Neither phrase could possibly be interpreted by Northland as offering them a "permissible purpose" to obtain a consumer's credit report.

Furthermore, the quote above from 15USC 1681b is referring ONLY to the reasons why the Credit Reporting Agency (CRA) may furnish a report and it does NOT refer to the user (Northland) of such a report. Users are required to CERTIFY to the CRA that they have a permissible purpose for the report that they are requesting. USC 15 §1681e defines the procedures for certification. "These procedures shall require that prospective users of the information identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose." 15 U.S.C. § 1681e(a).

Plaintiff contends that Northland did not, indeed could not, have CERTIFIED to Experian that it would use the credit report of the Plaintiff for a "permissible purpose" since the Plaintiff has sworn and will testify in court personally, that there exists no statutorily defined 'account' upon which the Defendant could collect. In addition, Northland should have known, since it is in the debt collection business, that they in fact had no legal reason for obtaining Plaintiff's credit report, therefore, their conduct was willful.

Under 15USC 1681a, Definitions and Rules of Construction the Statute states: (a) Definitions and rules of construction set forth in this section are applicable for the purposes of this subchapter. And further down under the definitions section at 15USC 1681a ( r )(4) it defines the term "account as follows: The terms "account" and "electronic fund transfer" have the same meanings as in section 1693a of this title. Here is the definition of "account" from 1693a:(2) "the term "account" means a demand deposit, savings deposit, or other asset account (other than an occasional or incidental credit balance in an open end credit plan as defined in section 1602 (i) [1] of this title), as described in regulations of the Bureau, established primarily for personal, family, or household purposes, but such term does not include an account held by a financial institution pursuant to a bona fide trust agreement;..."

Plaintiff has never had any such account that Defendant would have permissible purpose to obtain Plaintiff's private information from any CRA.

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served on the defendant's counsel of record listed below by hand on this the 6th day of March 2015.

/s/ Douglas Bersaw

Plaintiff *pro-se*
139 Tully Brook Road
Richmond, NH 03470
603-239-8827
thebersaws@ihmmedia.net

Kenneth E. Rubinstein, NH Bar #14926
krubinstein@preti.com
Daniel R. Sonneborn, NH Bar #20947
dsonneborn@preti.com
P.O. Box 1318
Concord, NH 03302-1318