```
                UNITED STATES DISTRICT COURT
                  DISTRICT OF NEW HAMPSHIRE
```

Douglas Bersaw

    v.                                                           Civil No. 14-cv-128-JL
                                                             Opinion No. 2015 DNH 050

Northland Group Inc.

## MEMORANDUM ORDER

In this action under the Fair Credit Reporting Act, 15 U.S.C. § 1681 et. seq. ("FCRA"),[1] plaintiff Douglas Bersaw alleges that on two occasions in February 2011, defendant Northland Group Inc. obtained his consumer credit report from credit reporting agency Experian. Bersaw says that he had never had any business dealings with, or sought credit from, Northland, and that he had never given it permission to obtain his report. Offended by what he viewed as "an egregious violation of [his] right to privacy," Bersaw filed suit in the 8th Circuit Court, District Division.

Northland, invoking this court's jurisdiction over civil actions arising under federal law, see 28 U.S.C. § 1331, removed the case to this court, see id. § 1441. It has now moved for summary judgment, see Fed. R. Civ. P. 56, arguing that the undisputed material facts show that it had a permissible purpose

---

[1]The complaint also included a claim under N.H. Rev. Stat. Ann. § 359-B, FCRA's state-law analog. The plaintiff has notified the court of his intent to abandon that claim, see document no. 12, so this order makes no further mention of it.

for obtaining Bersaw's consumer report--i.e., to collect an "account" of Bersaw's, as the FCRA defines that term--and that Bersaw therefore cannot recover. Alternatively, Northland argues, it cannot be held liable under the FCRA even if it had no lawful purpose for obtaining Bersaw's consumer report because the evidence does not show that it did so negligently or willfully. Having heard oral argument and carefully considered the parties' written submissions, the court concludes that the evidence fails to show conclusively that the debt Northland sought to collect qualified as an "account" under the FCRA, and that there is sufficient evidence to establish that Northland was, at minimum, negligent in accessing Bersaw's consumer report. As fully explained below, the court therefore denies Northland's motion.

I. **Applicable legal standard**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if it could reasonably be resolved in either party's favor at trial. See Estrada v. Rhode Island, 594 F.3d 56, 62 (1st Cir. 2010) (citing Meuser v. Fed. Express Corp., 564 F.3d 507, 515 (1st Cir. 2009)). A fact is "material" if it could sway the outcome under applicable law. Id. (citing Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir.

2008)). In analyzing a summary judgment motion, the court "views all facts and draws all reasonable inferences in the light most favorable to the non-moving party." Id. The following background summary is consistent with that approach.

## II. Background[2]

In 2005, Palisades Collection, LLC, purchased from Chase Bank, USA N.A. what Palisades characterizes as "two accounts in the name of Douglas A. Bersaw," but which were, so far as the evidence shows, simply debts of some kind. Six years later, in early 2011, Palisades contacted defendant Northland Group Inc., which is a debt collection agency, and asked it to collect both of Bersaw's debts. To this end, Palisades provided Northland with certain information about Bersaw and the debts themselves--though the record before the court does not reveal precisely what information was communicated.

Northland, undertaking the process it routinely uses when retained to collect a debt, contacted the credit reporting agency Experian two times (once for each debt) and requested a consumer

---

[2]Although Bersaw has not submitted evidence in response to Northland's motion for summary judgment, his opposition relies in part on the allegations of his verified complaint. Because, in this circuit, a verified complaint is "treated as the functional equivalent of an affidavit to the extent that it satisfies the standards explicated in Rule 56(e)," Sheinkopf v. Stone, 927 F.2d 1259, 1262 (1st Cir. 1991), portions of this background summary are drawn from the verified complaint.

credit report for Bersaw. Experian, having previously received Northland's certification that it would request such reports only for purposes permitted by FCRA, provided the report both times. Not long thereafter, Northland, satisfied that Bersaw in fact owed the debts in question, sent him two letters, making an offer to settle the debts and asking him to get in touch within thirty days if he disputed their validity. Bersaw did not do so.

In early 2012, Bersaw obtained his own consumer credit report from Experian, and discovered that Northland had twice sought and obtained the report as well. Bersaw had not had any business dealings or accounts with Northland, nor applied for credit or employment with it. In addition, according to Bersaw, "there was no account that [Northland] had any right to collect." Believing, therefore, that Northland had violated the FCRA and state law, Bersaw filed this action.

### III. Analysis

The FCRA, which "regulates access to individuals' 'consumer reports' (commonly known as credit reports)," provides that "[a]n entity may gain access to an individual's consumer report only with the written consent of the individual, unless the consumer report is to be used for certain 'permissible purposes,' in which case written consent is not required." Dixon v. Shamrock Fin. Corp., 522 F.3d 76, 77-78 (1st Cir. 2008) (quoting 15 U.S.C.

§ 1681b); see also 15 U.S.C. § 1681b(f) ("A person shall not use or obtain a consumer report for any purpose unless . . . the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section[.]"). Bersaw's FCRA claim relies upon the proposition that Northland had neither his written consent nor any "permissible purpose" recognized by the FCRA when it obtained his consumer report. Northland disagrees, arguing that the FCRA expressly permits an entity to obtain a consumer report when collecting a debt from the consumer, which, the undisputed evidence shows, was its purpose in obtaining Bersaw's report. As a result, it says, it is entitled to summary judgment. Northland is only partially correct about the law, and is incorrect about its entitlement to summary judgment.

As Northland points out, the FCRA permits an entity to obtain a consumer report when it "intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or <u>collection of an account of</u>, the consumer[.]" 15 U.S.C. § 1681b(a)(3)(A) (emphasis added). So, as another court in this circuit has noted, "[i]t is well established that a debt collection agency has the right to obtain a credit report [under this provision] so long as it is done in

connection with efforts to review or collect an account." Searle v. Convergent Outsourcing, Inc., No. 13-cv-11914, 2014 WL 4471522, *3 (D. Mass. June 12, 2014) (citing cases).

Significant to this case, however, is that the FCRA does not permit the retrieval of a consumer report in connection with the collection of <u>any</u> debt, as Northland suggests. Rather, as both Searle and the text of § 1681b(a)(3)(A) indicate, that is permitted only when the report is to be used in connection with the collection of an "account." The parties agree that the FCRA provides a specific, narrow definition of that term, which encompasses only

> a demand deposit, savings deposit, or other asset account (other than an occasional or incidental credit balance in an open end credit plan as defined in [15 U.S.C. § 1602(j)]), as described in regulations of the Bureau [of Consumer Financial Protection], established primarily for personal, family, or household purposes.

15 U.S.C. § 1693a(2); <u>see</u> id. § 1681a(r)(4) (incorporating definition of "account" set forth in Electronic Funds Transfer Act). For the court to grant summary judgment to Northland, then, it is not sufficient that Northland sought Bersaw's credit report in connection with the collection of a debt. The evidence must also show that the debt in question satisfied the definition of "account."

The evidence does not show that. There is, in fact, no evidence whatsoever that sheds any light on the nature of the

6

debts Northland was attempting to collect from Bersaw. They may well have been "demand deposit, savings deposit, or other asset account[s]," and they may well have been incurred "primarily for personal, family, or household purposes." But, based upon the information presently before the court, it is equally possible that the debts in question were not such accounts, and were incurred for business (or some other) purposes.

Northland, perhaps realizing this shortcoming, asserts in its reply memorandum that it "was engaged in the collection of two credit card accounts in Plaintiff's name," Reply (document no. 14) at 5, and cites ample case law for the proposition that the term "account" encompasses credit card accounts, see, e.g., Harris v. NCO Fin. Sys., No. 13-cv-259, 2013 WL 6858852, at *3 (D. Md. Dec. 23, 2013) (citing cases). Even if the court were to follow the lead of those courts and assume that credit card accounts fall within the FCRA's definition of "account,"[3] though,

---

[3]At oral argument, Bersaw quite astutely pointed out that the definition of "account" set forth in 15 U.S.C. § 1693a(2) specifically excludes "an occasional or incidental credit balance in an open end credit plan as defined in [15 U.S.C. § 1602(j)]." As credit card accounts are generally considered to be open end credit plans, see, e.g., Barrer v. Chase Bank USA, N.A., 566 F.3d 883, 887 (9th Cir. 2009); Benion v. Bank One, Dayton, N.A., 144 F.3d 1056, 1057 (7th Cir. 1998), there may be reason to doubt the view expressed in Harris and like cases. The court need not reach that issue, however, since (a) the court ordinarily does not address theories raised for the first time at oral argument, see Doe v. Friendfinder Network, Inc., 540 F. Supp. 2d 288, 304 n.19 (D.N.H. 2008), and (b) there is, as discussed in the text

7

the court cannot simply rely on Northland's say-so as to the nature of the debts--there must be some evidence substantiating Northland's position.  See Nieves v. Univ. of P.R., 7 F.3d 270, 280 (1st Cir. 1993) ("unsubstantiated allegations in [] memoranda" are insufficient on summary judgment).  There is not.[4]  Yet even if the court were to further indulge Northland's claim that it was seeking to collect credit card debts from Bersaw, Northland has not claimed–-let alone presented evidence establishing--that those debts were "established primarily for personal, family, or household purposes" (as opposed to, say, business purposes), as required for them to qualify as "accounts" under 15 U.S.C. § 1693a(2).  So, on the current record, there is a genuine issue of material fact as to whether Northland had a "permissible purpose" for obtaining Bersaw's consumer report.

As a fallback position, Northland argues that the court should grant summary judgment in its favor because the FCRA only imposes civil liability for willful or negligent violations, see

---

above, no evidence that the debts Northland sought to collect were credit card accounts.

[4]Also at oral argument, Northland attempted to characterize certain statements in Bersaw's (tardily-filed and thus denied) motion for summary judgment as a concession that the debts were credit card accounts.  But Bersaw's memorandum in support of that motion studiously avoids making any concession as to the nature of the debts, instead referring to them as "alleged," "disputed," and "purported" credit card debts.

15 U.S.C. §§ 1681n, 1681o, and there is no evidence showing that it acted with either of those mental states.  The court cannot agree.  The evidence before the court is that, in 2011, Palisades contacted Northland and asked to collect two debts allegedly owed by Bersaw.  There is no evidence showing that Northland took any steps to verify whether the debts qualified as "accounts" within the meaning of the FCRA before going about what it calls its "routine process" and obtaining Bersaw's credit report.

On this record, a reasonable finder of fact could conclude that Northland was either ignorant of, or simply ignored, the possibility that the debts Palisades retained it to collect from Bersaw were not "accounts" within the meaning of the FCRA.  This is, at a minimum, negligence, although it may well rise to the level of willfulness, too:  as the Supreme Court has held, "reckless disregard of a requirement of FCRA [will] qualify as a willful violation," Safeco Ins. Co. of Amer. v. Burr, 551 U.S. 47, 71 (2007) (Souter, J.), and a finder of fact could readily conclude that Northland recklessly disregarded the FCRA's requirement that it have a "permissible purpose" for requesting Bersaw's report.  So this case adheres to the rule that "questions involving a party's state of mind are generally appropriately resolved by a jury rather than on summary judgment." Thibodeaux v. Rupers, 196 F. Supp. 2d 585, 592 (S.D.

Ohio 2001) (denying summary judgment to defendant on claim that defendant obtained plaintiff's consumer report without a permissible purpose).

**IV.  Conclusion**

For the foregoing reasons, Northland's motion for summary judgment (document no. 10) is DENIED.

Northland's counsel are advised that several of the case citations in their memoranda were inaccurate, which hampered the court's ability to research the issues presented by the motion. Counsel should take care in the future to ensure that citations they include in their memoranda are correct.  The court does not wish to belabor the point, since the majority of Northland's citations were correct, but would recommend that, with respect to unpublished cases that appear solely on electronic databases such as Westlaw or Lexis, counsel provide as much alternative identifying information (e.g., case number, issuing court, and opinion date) as possible.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  March 11, 2015

17

```
cc:   Douglas Bersaw, pro se
      Kenneth Eric Rubinstein, Esq.
      Daniel R. Sonneborn, Esq.
```